**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SCOTTSDALE INSURANCE CO., | |
| Plaintiff, | NO. 3:04-CV-0994 |
| v. | (JUDGE CAPUTO) |
| WESTFALL TOWNSHIP, PENNSYLVANIA, et al., | |
| Defendants. | |

## MEMORANDUM

Presently before the Court is the Plaintiff's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). (Doc. 19-1.) For the reasons set forth below, Plaintiff's motion will be granted. The Court has jurisdiction over this matter due to diversity jurisdiction, 28 U.S.C. § 1332[1], and under 28 U.S.C. § 2201 *et seq.* (the Federal Declaratory Judgment Act).

## BACKGROUND

This action arises from the shooting death of Michael F. Walter by Joseph Stacy on July 5, 2002, in Port Jervis, New York. Mr. Stacy had earlier been accused of sexually and/or indecently assaulting two of Mr. Walter's daughters, and the murder was seemingly in retaliation for Mr. Walter's participation in eliciting a confession from Mr. Stacy thereto. This confession–which was made to Michael Walter and Defendant

---

[1] Because this Court is sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).

Timothy Mitchell separately–was elicited at the Walter home on August 16, 2001. More detailed facts of this exchange will not be described here, but may be discovered by reference to the underlying action. *Walter v. Pike County*, No. 03-1690.

On September 25, 2003, Susan L. Walter, Michael Walter's widow, filed a complaint–in her individual capacity, as administratrix of her husband's estate, and as parent and guardian of her minor children–against Pike County, Westfall Township, its police department, Timothy J. Mitchell, Pike County District Attorney's office, and several Pike County District Attorneys (hereinafter referred to as the "Underlying Plaintiffs" and "Underlying Defendants," respectively). On October 30, 2003, Underlying Plaintiffs filed a First Amended Complaint with this Court (hereinafter referred to as the "Underlying Action"). *Walter v. Pike County*, No. 03-1690, Doc. 6. Claims from the Underlying Action that survived Underlying Defendants' motions to dismiss include, *inter alia*, claims for violations of substantive and procedural due process for failing to provide police protection–which Underlying Plaintiffs claim right to under the "state-created danger" doctrine–to the Walter family following Michael Walter's participation in eliciting a confession from Joseph Stacy on August 16, 2001.

Prior to the shooting death of Mr. Walter on July 5, 2002, Plaintiff Scottsdale Insurance Co. provided insurance coverage to Westfall Township, through policy number PLO0543049, which was in effect from February 7, 2001 through February 7, 2002. The Scottsdale Policy was renewed for the period of February 7, 2002 through February 7, 2003 under policy number PKO0000459 (this renewal policy will be hereinafter referred to as "the Scottsdale Policy").

Plaintiff filed a complaint for declaratory judgment on May 5, 2004, alleging that

2

they have no duty to defend or indemnify Defendants in the Underlying Action because, *inter alia*, the Scottsdale Policy was cancelled on July 1, 2002, prior to the "occurrence" that potentially triggered coverage, i.e. the shooting of Michael Walter.  (Doc. 1.)  On August 16, 2004, Defendant Timothy Mitchell filed a motion for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 7.)  That motion was dismissed by this Court on April 7, 2005.  (Doc. 14.)  The Plaintiff later filed, on November 11, 2005, the present motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), along with supporting documentation.  (Docs. 19, 20, 21, 22.)  Defendants failed to file a timely brief in opposition to the motion for summary judgment; nevertheless, this motion is ripe for disposition.

## LEGAL STANDARD

**A.     Summary Judgment**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a

3

genuine one. *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**B.     Interpretation of Insurance Contracts**

The interpretation of an insurance contract is a question of law for the court to decide. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997) (citing *Standard Venetian Blind v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). "Whether a particular loss is within the coverage of an insurance policy is such a question of law and may be decided on a motion for summary judgment in a declaratory judgment action." *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 657 A.2d 1252, 1255 (Pa. Super. 1995).

A court must give effect to the plain language of the insurance contract read in its entirety. *Reliance*, 121 F.3d at 901. When the language of an insurance policy is ambiguous, the provision must be construed in favor of the insured. *Reliance*, 121 F.3d at 900-01 (citing *Standard Venetian Blind Co.*, 469 A.2d at 566). Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning. *Bowersox v. Progressive Cas. Ins. Co.*, 781 A.2d 1236, 1239 (Pa. Super. 2001) (citing *Hutchinson v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1985)). However, the language of an insurance policy may not be stretched beyond its plain meaning to create an ambiguity. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

The insured has the initial burden of establishing coverage under the policy. *Butterfield v. Giuntoli*, 670 A.2d 646, 651-52 (Pa. Super. 1995). On the other hand, when the insurer relies on a policy exclusion as the basis for denying coverage, it bears the burden of proving that the exclusion applies. *Mistick, Inc. v. Northwestern Nat. Cas. Co.*,

806 A.2d 39, 42 (Pa. Super. 2002).  The insurer can sustain its burden only by establishing the exclusion's applicability by uncontradicted facts in the record.  *Butterfield*, 670 A.2d at 651-52.  Policy exclusions are strictly construed against the insurer.  *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n. 3 (3d Cir. 1998) (citing *Standard Venetian Blind*, 469 A.2d at 566).

## C. Insurer's Duty to Defend

An insurance carrier's duty to defend is distinct from its duty to provide coverage. It is interpreted more broadly than the duty to indemnify.  *Britamco Underwriters, Inc. v. Weiner*, 636 A.2d 649, 651 (Pa. Super. 1994).  An insurer may have a duty to defend even though it may have no duty to indemnify.  *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999).  A duty to indemnify does not arise until the insured is found liable for a covered claim.  *Id*.

An insurer is obligated to defend the insured against any suit arising under the policy "even if the suit is groundless, false, or fraudulent."  *Britamico*, 636 A.2d at 651 (quoting *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 188 A.2d 320, 321 (Pa. 1963)). Consequently, whenever a complaint filed against the insured could potentially come within the policy's coverage, the insurer's duty to defend is triggered.  *Belser v. Rockwood Cas. Inc. Co.*, 791 A.2d 1216, 1219, 1222 (Pa. Super 2002); *Phico Ins. Co. v. Presbyterian Med. Servs. Corp.*, 663 A.2d 753, 755 (Pa. Super 1995).  If a single claim in a complaint containing multiple claims is potentially covered, the duty to defend attaches until the underlying plaintiff can no longer recover on a covered claim.  *Frog, Switch & Mfg. Co.*, 193 F.3d at 746.  Because the duty to defend is broader than the duty to

indemnify, the complaint must be construed liberally, the factual allegations must be accepted as true, and all doubts as to coverage resolved in favor of the insured. *Roman Mosaic & Tile Co.* v. Aetna Cas. & Sur. Co., 704 A.2d 665, 669 (Pa. Super. 1997). To prevent artful pleading designed to avoid policy exclusions, it is necessary to look at the factual allegations in the complaint, and not how the underlying plaintiff frames the request for relief. *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999). In other words, it is the substance of the allegations–and not their form–that is the focus of the coverage inquiry.

## DISCUSSION

In the memorandum and order issued April 7, 2005, this Court determined that:

neither the Public Officials Liability Coverage nor the Employment Practices Liability Coverage sections of the Policy provide coverage for suits arising out of law enforcement activities. It is also clear that such coverage is provided by the Law Enforcement Liability Coverage ("LELC") section, provided the wrongful acts of the insured occurred within the policy period.

(Doc. 14 at 3-4) (internal citation omitted).

The Court continued:

[t]he LELC, as evidenced by its full title, is clearly an "occurrence policy." The United States Court of Appeals for the Third Circuit defines an "occurrence policy" as an insurance policy where the "insured is indemnified for acts or occurrences which take place within the policy period." *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 59 (3d Cir. 1982). This is to be contrasted with a "claims made policy" where the "insured its [sic] indemnified for 'claims made' during the policy period regardless of when the acts giving rise to those claims occurred." *Id.* Under an occurrence policy, a determination as to whether the occurrence took place during the period of coverage is "made by reference to the time when the injurious effects of the occurrence took place." *Id.* at 61-62. That is to say, the moment in time when the event produced personal injury is

deemed the time of the occurrence.  *Id.* at 62.

(Doc. 14 at 4).

The Court further determined that the only injury alleged in the Underlying Complaint was the death of Michael Walter, and that consequently that event constitutes the "occurrence" for purposes of determining the scope of coverage.  *Id.*  Finally, the Court concluded that if the Scottsdale Policy, including the LELC, was in fact cancelled on July 1, 2002, as Plaintiff alleges, then Plaintiff has no duty to defend or indemnify Defendants in the Underlying Action.  *Id.* at 4-5.  The Court must thus determine the *de facto* cancellation date of the Scottsdale Policy.

Plaintiff provides several exhibits that are of assistance to the Court in making the determination of the effective period of the Scottsdale Policy.  Specifically, there is a letter from David L. Kerr of R.C. Lain, Inc. (as policy producer for the insured, Westfall Township), stating that the Scottsdale Policy was cancelled "effective 7/01/02 as coverage was replaced on that date with Selective Insurance Company."  (Doc. 22 at 10.) Accompanying the letter is a Cancellation Request/Policy Release form ("the Form"), signed by Westfall Township Supervisors Kenneth Thiele, Deborah Fischer, James Muir, and Keith Peters, with those signatures having been purportedly witnessed by Township Secretary/Treasurer Lisa Green.  The Form shows the effective date and hour of cancellation of Policy PKO0000459 as July 1, 2002 at 12:01 a.m. *Id.* at 11.  The authenticity of this letter and the signed Form are not disputed; therefore, the Court will consider the contents of these documents as valid and dispositive.  As a result, the Court finds that the effective cancellation date of the Scottsdale Policy was July 1, 2002.

The "bodily injury" resulting from the "law enforcement wrongful acts" (as those terms are defined in the Scottsdale Policy) occurred on July 5, 2002, when Michael Walter was shot and killed.  The LELC was terminated effective July 1, 2002.  Because the injury resulting from the wrongful acts alleged to have been performed by Defendant Mitchell was not manifested until after cancellation of the policy, the "occurrence" took place outside of the effective policy coverage period.  Therefore, this Court finds, as a matter of law, that there is no coverage for the claims asserted in the Underlying Action; therefore, Scottsdale Insurance Co. has no duty to defend or indemnify Defendants in the Underlying Action.

## CONCLUSION

For the above stated reasons, the Court concludes that Plaintiff has no duty to defend or indemnify the Defendants in the Underlying Action.  Plaintiff's present motion for summary judgment–with respect to their earlier declaratory judgment action–is therefore granted.

An appropriate Order will follow.


Date: October 19, 2006_____          /s/ A. Richard Caputo
                                          A. Richard Caputo
                                          United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SCOTTSDALE INSURANCE CO., | |
| Plaintiff, | NO. 3:04-CV-0994 |
| v. | (JUDGE CAPUTO) |
| WESTFALL TOWNSHIP, PENNSYLVANIA, et al., | |
| Defendants. | |

**ORDER**

**NOW**, this   19th   day of October, 2006, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment under Federal Rule of Civil Procedure 56(c) (Doc. 19-1) is **GRANTED**.

　　　　　　　　　　　　　　　　　　　 /s/ A. Richard Caputo
　　　　　　　　　　　　　　　　　　　A. Richard Caputo
　　　　　　　　　　　　　　　　　　　United States District Judge